[TAGGED]

ORDERED in the Southern District of Florida on _04-15-11_.



_____
Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| In re: | |
| GAYLA SUE LEVIN, | Case No. 10-27946-BKC-RBR |
| Alleged Debtor. | Chapter 7 |
| _____/ | |
| In re: | |
| GEORGE LEVIN, | Case No. 10-33696-BKC-RBR |
| Alleged Debtor. | Chapter 7 |
| _____/ | |

### ORDER DENYING PETITIONING CREDITORS' RENEWED MOTION AND MOTION FOR APPOINTMENT OF INTERIM TRUSTEE IN BOTH INVOLUNTARY CASES

THIS CAUSE came before the Court in Ft. Lauderdale, Florida on March 15, 2011 and March 23, 2011, respectively, for a consolidated evidentiary hearing (the "Hearing") [DE 121 ("Tr.")] in Case Nos. 10-27946-RBR and 10-33696-RBR (hereinafter, referred to as the "Involuntary Cases"), upon: (1) the *Renewed Motion for Appointment of Interim Trustee Pursuant to Section 303(g) of the Bankruptcy Code* [DE 73] and *Memorandum in Support of Petitioning Creditors' Motions for the Appointment of Interim Trustees* [DE 81] filed by

Petitioning Creditors Centurion Structured Growth LLC, Level 3 Capital Fund LP, Platinum Partners Value Arbitrage Fund, L.P and *Response to Memorandum in Support of Petitioning Creditors' Motions for the Appointment of Interim Trustees* [DE 84] filed by Alleged Debtor Gayla Sue Levin, in Case No. 10-27946-RBR; and (2) the *Motion for Appointment of Interim Trustee Pursuant to Section 303(g) of the Bankruptcy Code* [DE 33] and *Memorandum in Support of Petitioning Creditors' Motions for the Appointment of Interim Trustees* [DE 45] filed by Joining Petitioning Creditors Centurion Structured Growth LLC, Level 3 Capital Fund LP, Platinum Partners Value Arbitrage Fund, L.P and *Response in Opposition to Motion for Appointment of Interim Trustee and Response to Memorandum in Support of Petitioning Creditors' Motions for the Appointment of Interim Trustees* [DE 48, 49] filed by Alleged Debtor George Levin in Case No. 10-33696-RBR.

At the Hearing, the Court heard the live testimony of George Levin, Dr. Ray Lopez, Joseph J. Luzinski, and Herbert Stettin, and was presented with the deposition testimony and/or excerpts thereof of Gayla Sue Levin, Mark Nordlicht, Ari Glass, and Brian Jedwab. The Court also admitted into evidence and has considered Exhibits 1 through 20 submitted by Petitioning Creditors, Exhibits 1 through 7, 10, and 12 through 25 submitted by the Alleged Debtors, and Exhibits 1 through 8, 13, and 18 through 22, submitted by Herbert Stettin, as Chapter 11 Trustee for the estate of Rothstein, Rosenfeldt & Adler, P.A. ("RRA"), Case No. 09-34791-RBR.

The Involuntary Cases before the Court were commenced on June 25, 2010 (Case No. 10-27946-RBR) and August 12, 2010 (Case No. 10-33696-RBR), respectively. Although the Petitioning Creditors are technically "joining" creditors in the involuntary case commenced against Alleged Debtor George Levin, the Petitioning Creditors have been the parties actively prosecuting such case and are the sole parties seeking the appointment of an interim trustee in both Involuntary Cases. While there may be a host of factual and legal issues which eventually will be presented and addressed by the Court in connection with Petitioning Creditors'

involuntary petitions and the Alleged Debtors' defenses to those petitions, for purposes of the instant Motions, the Court confines itself to the narrow determination of whether the appointment of interim trustees as sought by Petitioning Creditors in the Involuntary Cases is "necessary to preserve the property of the estate or to prevent loss to the estate" as provided by 11 U.S.C. § 303(g).

Based upon the Court's consideration of the testimony, exhibits and record, and for the reasons set forth below, the Court finds that appointment of a trustee is not necessary, and denies the Motions for the reasons that follow.

### I.     FACTS AND ANALYSIS.

Under the bankruptcy code, a debtor may continue to acquire or dispose of property until the order for relief is entered, and the involuntary filing does not restrict these activities. 11 U.S.C. § 303(f); see In re DiLorenzo, 161 B.R. 752, 754 (Bankr. S.D.N.Y. 1993). Section 303(g) provides a remedy to prevent an alleged debtor dissipating his or her assets by allowing a party in interest to seek appointment of an interim trustee during the involuntary "gap period." This section provides in part:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and **if necessary to preserve the property of the estate or to prevent loss to the estate**, may order the United States trustee to appoint an interim trustee under section 701 to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g) (emphasis added). An application for appointment of interim trustee should be denied where no facts are alleged showing a necessity for appointment. In re Reed, 11 B.R. 755, 757 (Bankr. S.D.W. Va. 1981). The request for interim trustee should not be granted in absence of an exceptionally strong need for doing so. See In re R.S. Grist Co., 16 B.R. 872, 873 (S.D. Fla. 1982). Instances where a need has been found include protecting and preserving property of the estate by preventing concealment, waste or loss of assets by the

3

alleged debtor, or preventing irreparable harm which would likely result during the gap period. *In re DiLorenzo*, 161 B.R. at 754 n.8.

In support of their Motion to establish an interim trustee is "necessary," the Petitioning Creditors sought to characterize Alleged Debtor, George Levin, as an overly medicated[3] elderly individual, incapable of managing his assets or business affairs, however the Court had the opportunity to view Mr. Levin during his five hours of testimony and disagrees. The Court found Mr. Levin to have a well-informed, working knowledge of his business affairs and assets, and an acute appreciation of the challenges presented with respect to businesses and real and personal property in this economy.[4]

The Petitioning Creditors also point the Court to three post-petition sales, the proceeds of which were remitted to William L. Richey, Esq., Mr. Levin's counsel, pursuant to a Term Sheet in RRA [Case No. 09-34791-RBR at DE 831]. George Levin and Joseph Luzinski, the Collateral Monitor referenced in the Term Sheet, both testified to and identified communications wherein the Alleged Debtors not only notified Mr. Luzinski and his colleague, Daniel Stermer, as to the Alleged Debtors' intentions to sell such property but sought input from both as to the advisability of such sales, the terms of sale, and whether such sales were within a sound business judgment. Tr. 259-60. While the Petitioning Creditors have pointed out that Mr. Richey has disbursed significant amounts from his trust account to the Alleged Debtors'

---

[3] The Petitioning Creditors presented the testimony of Dr. Ray Lopez, a neurologist, for the purpose of purportedly demonstrating "the warnings and side effects" of the medications Mr. Levin testified to taking. Tr. 217. Although the Court was impressed with the credentials of Dr. Lopez, the Court gives little weight to his testimony regarding whether Alleged Debtor George Levin was capable of managing his business affairs and assets.

[4] While Alleged Debtor Gayla Sue Levin has had some involvement with and knowledge of the couple's business affairs and assets, the Alleged Debtor George Levin was the individual most knowledgeable of and intimately involved over a 40 year period in the acquisition, management, and where appropriate, sale of the couple's assets. These assets, in addition to passive real estate and personal property holdings, include an operating hotel property in Palm Beach, a mobile home community in the Catskills region of New York, a medical office building and raw land in West Virginia, and student apartments in Gainesville, Florida. The primary pre-petition business of the Levins was to manage, buy, and sell investment properties. Indeed, the Levins own and manage numerous business entities, and most of the transactions highlighted by movants involve such non-debtor entities.

attorneys and other professionals, the invoices for such disbursed fees and reimbursement of costs were provided to Trustee Stettin and his counsel for review. In addition, Mr. Stettin testified that such fees were reviewed to determine that the fees had actually been incurred for the Levins and that such work "benefited in the long run the creditors of both their side, but just as important to me, for the RRA estate, as well." Tr. 326-28. Further, the fact that the Levins have alerted the RRA Trustee and the Collateral Monitor to additional sales of Settlement Assets that may materialize in the near future indicates that the Levins are being candid and forthright with Trustee Stettin, Mr. Luzinski, and the Petitioning Creditors.

Overall, the evidence presented establishes that the Alleged Debtors have made a good faith effort to maximize the value of those assets which should be and are capable of being sold, managed those assets which either should not be presently sold or were simply not worth the debt encumbering such assets, and have otherwise managed their affairs consistent with the dictates of both the Term Sheet and the Alleged Debtors' duties under bankruptcy law. The evidence reflects that such matters do not pose a risk of loss to the estate and do not pose a risk of loss which would be prevented by the appointment of a Trustee.

Further, the appointment of a trustee or two trustees during the pendency of the gap period would create a substantial administrative expense.[17] There is no evidence that such costs will be outweighed by any benefit or prevention of loss to the estate. Such expense would be incurred despite the fact that Mr. Levin is "well suited" to presently manage the properties, Tr. 294, and that a trustee or trustees would not likely be up to speed prior to trial on these involuntary petitions, Tr. 305.

---

[17] Although Herbert Stettin is not a fiduciary and bankruptcy trustee for the Levins' involuntary bankruptcy estates, as a creditor, counterparty to the Term Sheet, and party in interest in these cases, Mr. Stettin testified regarding a substantial overlap between creditors of the alleged debtors as well as creditors of the RRA bankruptcy. Further, he testified that the Levins' have collaborated and cooperated with the RRA bankruptcy estate and its counsel in preserving and furthering potential litigation and insurance recoveries which inure to the mutual benefit of creditors of the alleged debtors as well as victims of the RRA fraud generally. Tr. 339-42, 354-55.

## II.  CONCLUSION.

In conclusion, there is no such showing of necessity in connection with Petitioning Creditors' Motion as there is no danger, or any facts indicating any danger, of imminent loss to the estate in respect of the Alleged Debtors' bankruptcy estate.  Accordingly, it is **ORDERED**

1. The *Renewed Motion for Appointment of Interim Trustee Pursuant to Section 303(g) of the Bankruptcy Code* [DE 73] filed by Petitioning Creditors Centurion Structured Growth LLC, Level 3 Capital Fund LP, Platinum Partners Value Arbitrage Fund, L.P in Case No. 10-27946-RBR is **DENIED** without prejudice.

2. The *Motion for Appointment of Interim Trustee Pursuant to Section 303(g) of the Bankruptcy Code* [DE 33] filed by Joining Petitioning Creditors Centurion Structured Growth LLC, Level 3 Capital Fund LP, Platinum Partners Value Arbitrage Fund, L.P in Case No. 10-33696-RBR is **DENIED** without prejudice.

###

Copies to:
Scott Baena, Esq.
Jay Sakalo, Esq.
Craig A. Pugatch, Esq.
Kenneth B. Robinson, Esq.